UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DORSETT-FELICELLI, INC., d/b/a Pyramids
and PYRAMIDS PRE-SCHOOL, INC.,

                                  Plaintiffs,

        -against-                              1:04-CV-1141
                                                (LEK/RFT)

COUNTY OF CLINTON, PAULA CALKINS
LACOMBE, individually and in her official
capacity as Director of the County of Clinton
Department of Public Health, and KATHERINE
O'CONNOR, individually and in her official
capacity as Early Intervention Official and
PreSchool Related Service Coordinator, NORTH
COUNTRY KIDS, INC., STEPHANIE GIRARD,
KELLY MCCAULEY and MELISSA PURCHALSKI,

                                  Defendants.

---

## MEMORANDUM-DECISION AND ORDER[1]

### I.      Background

      Melissa Dorsett-Felicelli is the President and Executive Director of two corporations,

Dorsett-Felicelli, Inc., d/b/a Pyramids (hereafter "Pyramids"), and Pyramids Pre-School, Inc.

(hereafter "Pre-School") (collectively "Plaintiffs").  Plaintiffs bring this action pursuant to 42 U.S.C.

§ 1983, alleging that Defendants took retaliatory actions in violation of Dorsett-Felicelli's First

Amendment rights.  Currently before the Court is a motion to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6) by Defendants County of Clinton ("County"), Paula Calkins LaCombe

("LaCombe"), and Katherine O'Connor ("O'Connor") (collectively "County Defendants").

---

[1] For printed publication in the Federal Reporter.

**II.    Facts**

Pyramids is a corporation that provides individualized services, such as speech, nutritional, occupational and physical therapies, to children of ages birth through three, pursuant to the Early Intervention Program ("EIP") established by New York Public Health Law.  See N.Y. PUB. HEALTH LAW §§ 2540 - 2559.[2]  The approval of New York State's Department of Health is required to become an authorized provider of these services.  N.Y. COMP. CODES R. & REGS. tit. 10, § 69-4.5 (1997).  Once approval has been received, a municipal official refers children to the service providers.  N.Y. PUB. HEALTH LAW § 2552; N.Y. COMP. CODES R. & REGS. tit. 10, §§ 69-4.2, 4.3 (1997).  As evidenced by its contract with the Clinton County Department of Public Health for the period January 12, 2004 through December 31, 2004, Pyramids is an authorized EIP service provider.  EIP Contract (Dkt. No. 3, Ex. F).  Pyramids receives the statutory fee of $70 for each therapy session provided.  Dorsett-Felicelli Aff. (Dkt. No. 3) at ¶ 6.

Pre-School provides special education and related therapy services to children ages three through five who have learning disabilities, pursuant to the Preschool Special Education ("PSE") Program that has been established under New York State Education Law.  N.Y. EDUC. LAW § 4410.  Approval of the Commissioner of the New York State Department of Education is required to become a service provider under this program.  N.Y. EDUC. LAW § 4410(9).  For participation in the PSE Program, children are referred to Pre-School through a school district's board of education.  N.Y. EDUC. LAW § 4410(2).  Pre-School has signed a contract with the Clinton County Public Health Department to offer PSE services from July 1, 2004 through June 30, 2005.  PSE Services

---

[2] Section 2559-b provides that the "commissioner may adopt regulations necessary to carry out the provisions of this title . . . ."  Those promulgated regulations appear in Title 10 of the New York Codes, Rules and Regulations, as will be cited below.

Contract (Dkt. No. 3, Ex. M).

Beginning in the Fall 2003, Dorsett-Felicelli began to voice her objection to what she perceived as the County's unlawful use of independent unlicensed contractors as service providers under these programs. Complaint (Dkt. No. 1) at ¶¶ 27-28. Dorsett-Felicelli contends that the County designates certain providers as independent contractors to save money because this status avoids payment of certain state and federal employee taxes. Dorsett-Felicelli Aff. (Dkt. No. 3) at ¶ 9. Affording some providers this status therefore undercuts Pyramids' and Pre-School's ability to compete and to retain and recruit qualified specialists. Id.

In a meeting in September 2003, Dorsett-Felicelli complained to several County officials, County Administrator William Bingel, County Attorney Dennis Curtin, and Assistant County Administrator Michael Zurlo, about the County's use of independent contractors for work under these programs. Id. at ¶ 10. In October 2003, Dorsett-Felicelli met with Zurlo, Curtin, and O'Connor, County Coordinator for EIP services, to reiterate her concerns. Id. at ¶ 11. She contends that upon voicing her objection, Curtin threatened that she could encounter problems with the way that Pyramids does its billing. Id. On December 10, 2003, Dorsett-Felicelli took her concerns to the Clinton County Legislature, but she claims that she only received "lip service." Id. at ¶ 12.

Plaintiffs contend that the County was surreptitiously involved in encouraging three of Pyramids' employees, Melissa Puchalski, Stephanie Girard and Kelly McCauley, to form North Country Kids, a competing agency which also provided EIP and PSE services. Id. at ¶ 14. As evidence of this allegation, Plaintiffs point out that the County scrambled to have North Country Kids' provider status approved prior to Pyramids' termination of employment of these three employees because their employment with a licensed service provider, such as Pyramids, was

necessary to allow transfer of session hours to North Country Kids. Id. To expedite the North

Country Kids' service provider approval, the County Legislature "took the unusual step of calling

for a vote on the agreement by telephone rather than in chambers." Id. Plaintiffs also note that

North Country Kids was included on a February 4, 2004 list of service providers compiled by the

Clinton County Department of Public Health, when its approval by the County Legislature was not

obtained until February 11. Id. at ¶¶ 15-16. State approval was never obtained.

In a memorandum dated February 12, 2004, County Defendants notified Pyramids and Pre-

School that effective February 16, 2004, County Defendants had elected to transfer EIP and PSE

session hours away from Pyramids and Pre-School to North Country Kids. Clinton County Health

Dep't. Memo (Dkt. No. 3, Ex. G). Plaintiffs contend that this represents a gross revenue of

$207,480 annually. Dorsett-Felicelli Aff. (Dkt. No. 3) at ¶ 17.

Shortly after this transfer of session hours, an anonymous letter was sent to the Department

of Education, alleging that Pyramids' services jeopardize the safety of the children. Id. at ¶ 18. The

Department of Education, understandably concerned for the safety of the children, did an

investigation and reported that there was no merit to these allegations and that Pyramids services

were of "exemplary quality." Letter of Rusty Kindlon, State Dep't. of Ed. (Dkt. No. 3, Ex. I).

Dorsett-Felicelli believes that County Defendants were involved in the sending of this letter.

Dorsett-Felicelli Aff. (Dkt. No. 3) at ¶ 18. She hired a forensic linguistic analyst who is of the

opinion that O'Connor may have written the anonymous letter. Id. at ¶ 18. The County has refused

requests to investigate the matter. Id.

On June 1, 2004, Pyramids filed an Article 78 proceeding in the Supreme Court of the State

of New York, County of Clinton, against defendants County of Clinton, County of Clinton

4

Department of Public Health, LaCombe, and O'Connor.  Complaint (Dkt. No. 1) at ¶ 51.  That

action seeks declaratory and injunctive relief and specifically "seeks to have the session hours

reinstated on the ground that the respondents in that proceeding acted arbitrarily and capriciously

with regards to Pyramids."  Dorsett-Felicelli Aff. (Dkt. No. 3) at ¶ 19.

Plaintiffs contend that in response to the filing of that Article 78 proceeding, County

Defendants retaliated against Pyramids and Pre-School.  Id. at ¶ 20.  In August 2003, County

Defendants had made 546 EIP session referrals to Pyramids, a number consistent with previous

months, but in June 2004, referrals dropped to 100.  Id.  Additionally, after the filing of the Article

78 proceeding, on September 1, 2004, County Defendants transferred Special Education Itinerant

Teacher ("SEIT") services for 11 students, a total of 30 sessions per week for 40 weeks, sessions

that are part of the PSE Program, away from Pre-School.[3]  Id. at ¶ 21.  The transfer of SEIT sessions

constitute a loss of about $76,800 of income to Pre-School.  Complaint (Dkt. No. 1) at ¶ 57.

Plaintiffs filed the instant action on September 30, 2004, along with a motion for a

preliminary injunction.  Complaint (Dkt. No. 1); P.I. Motion (Dkt. No. 3).  The Clinton County

Supreme Court issued a decision in the Article 78 proceeding on October 31, 2004.  Dorsett-

Felicelli, Inc., d/b/a/ Pyramids v. County of Clinton, et al., No. 04-0547 (N.Y. Sup. Ct. Oct. 31,

2004).  Justice McGill dismissed the case and held that petitioners, Dorsett-Felicelli and Pyramids,

---

[3] The sessions were actually transferred to Teddy Bear Child Care, Inc. ("Teddy Bear").
Dorsett-Felicelli Aff. (Dkt. No. 3) at ¶ 22.  The referral to Teddy Bear was made because North
Country Kids could not receive approval as a PSE program and SEIT service provider, as the New
York State Department of Education ruled that there was no unmet need in the County, thereby
eliminating the need for another service provider.  Id.  Therefore, the session hours were transferred
to Teddy Bear, as Teddy Bear it is the only other PSE service provider in Clinton County.  Id.
Teddy Bear in turn subcontracted the session hours to North Country Kids.  Id. at ¶ 23.  Teddy Bear
is not a party to this action because Pyramids admitted in the order to show cause hearing that it has
no evidence of any illegal motive on Teddy Bear's part in taking the transferred session hours.

lacked standing because the statutes and regulations were not implemented to protect against the harm of which they complained, explaining that "petitioner[s] simply failed to make the 'critical showing' that [their] injury falls within the 'zone of interest' of either [the Public Health Law or Education Law]." Id. at 9.

On November 16, 2004, the Court issued an Order ("Nov. 16 Order") on the motion for a preliminary injunction holding, *inter alia*, that (1) the Court would abstain from all claims for declaratory or injunctive relief relating to the transfer of EIP session hours and (2) the motion with respect to the transfer of SEIT session hours was denied. Nov. 16 Order (Dkt. No. 16) at 21.

**III.    Discussion**

   **A.    Younger Abstention**

The Supreme Court's ruling in Younger v. Harris, 401 U.S. 37 (1971), established that a federal court, although it properly has jurisdiction, in the interest of comity, should abstain from hearing a case that would interfere with an ongoing state criminal proceeding. "[D]ismissal or a stay of claims is mandatory when the requirements for Younger abstention are satisfied . . . ." Spargo v. N.Y. Comm'n on Judicial Conduct, 351 F.3d 65, 74 (2d Cir. 2003) (noting also that "Younger is not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity") (citing to Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 197 (2d Cir. 2002)). "Younger generally prohibits courts from 'taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings' so as to avoid unnecessary friction." Id. at 75 (citing to Diamond, 282 F.3d at 198); see also Cullen v. Fliegner, 18 F.3d 96, 103 (2d Cir. 1994) (Younger "is based on the premise that ordinarily a state proceeding provides an adequate forum for the

vindication of federal constitutional rights . . . .").  Although <u>Younger</u> abstention was developed to prohibit a federal court's interference with an ongoing state criminal proceeding, it has since been extended to civil cases.  <u>Huffman v. Pursue</u>, 420 U.S. 592 (1975); <u>see also</u> <u>Trainor v. Hernandez</u>, 431 U.S. 434 (1977).

Abstention under <u>Younger</u> and its progeny follows a prescribed formula.  A federal court must refrain from hearing a federal constitutional claim when (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for federal judicial review of his federal constitutional claims.  <u>Spargo</u>, 351 F.3d at 75.  The Second Circuit, relying on the statements of the Supreme Court, has instructed that:

> "[U]nless state law clearly bars the interposition of the constitutional [or federal] claims," and "so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain."  <u>Middlesex County Ethics Comm. v. Garden State Bar Ass'n.</u>, 457 U.S. 423, 432, 435 (1982).  <u>Younger</u> itself explained that exceptions to abstention should be made only on a "showing of bad faith, harassment, or . . . other unusual circumstance."  <u>Younger</u>, 410 U.S. at 54.

<u>Kirshner v. Klemons</u>, 225 F.3d 227, 233-34 (2d Cir. 2000).  Additionally, if a court finds that abstention is proper, it may dismiss the case or otherwise stay the proceedings pending a resolution of the state court action.

The Court fully addressed this issue in the Nov. 16 Order, and abstained from all claims for declaratory and injunctive relief relating to the transfer of EIP hours because of the ongoing Article 78 proceeding.  Nov. 16 Order (Dkt. No. 16) at 14, 21.  Because punitive damages are not available in such a proceeding, the Court did not abstain from the claim for punitive relief relating to the

transfer of EIP hours, but stayed the federal action until there was a resolution of the Article 78

proceeding. Id. at 13, 21.  As the SEIT hours were transferred after the filing of the state proceeding

and would not impact it, the Court also did not abstain from exercising its jurisdiction over those

claims.  Id. at 9-10.  The parties have presented no justification for altering this Court's earlier

decision regarding Younger abstention, and thus, the decision stands.[4]

### B.    Motion to Dismiss

#### 1.    Standard

A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure must be denied "'unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief.'"  Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994) (quoting Conley v. Gibson, 355 U.S.

41, 45-46 (1957)).  In assessing the sufficiency of a pleading, the Court must "assume all well-

pleaded factual allegations to be true, and . . . view all reasonable inferences that can be drawn from

such allegations in the light most favorable to the plaintiff."  Dangler v. New York City Off Track

Betting Corp., 193 F.3d 130, 138 (2d Cir. 1999).  Consideration is limited to the complaint,

documents attached to the complaint or incorporated into it by reference, matters of which judicial

notice may be taken, and "documents either in plaintiffs' possession or of which plaintiffs had

knowledge and relied on in bringing suit."  Brass v. Amer. Film Techs., Inc., 987 F.2d 142, 150 (2d

Cir. 1993); Young v. Goord, No. 01 CV 626 (JG), 2005 WL 562756, at *6 (E.D.N.Y. Mar. 10,

2005).  Thus, the Court will consider not only factual allegations included in the complaint, but also

---

[4] Because the Court is staying this proceeding with regards to the punitive damages request
for the transfer of EIP session hours, County Defendants' claim that punitive damages are not
recoverable in this action will not be addressed.

those in the documents submitted by Plaintiffs in support of their motion for preliminary injunction, as those documents were in Plaintiffs' possession and they had knowledge of those documents and relied upon them in bringing suit.[5]

### 2.    Failure to State a Claim Regarding SEIT Hours

Because the Court is abstaining from the claims for declaratory and injunctive relief regarding the EIP hours, and staying this action regarding punitive damages for the EIP hours, only the transfer of SEIT hours remain at issue.  To prevail on their First Amendment retaliation claim brought pursuant to § 1983, Plaintiffs must demonstrate by a preponderance of the evidence that:

> (1) [Plaintiff's] speech was constitutionally protected, (2) [Plaintiff] suffered an adverse employment decision, and (3) a causal connection exists between [Plaintiff's] speech and the adverse employment determination against him, so it can be said that his speech was a motivating factor in the determination. If a plaintiff establishes these three factors, the defendant has the opportunity to show by a preponderance of the evidence that it would have taken the same adverse employment action even in the absence of the protected conduct.

Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545, 553 (2d Cir. 2001) (citing Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)).[6]

There is no dispute that Dorsett-Felicelli's complaints to County officials and attempts to obtain judicial relief are constitutionally protected.  See Dougherty v. Town of N. Hempstead Bd. of Zoning, 282 F.3d 83, 91 (2d Cir. 2002); see also Gagliardi v. Vill. of Pawling, 18 F.3d 188, 194 (2d

---

[5] Furthermore, County Defendants refer to these documents in their motion to dismiss, see, e.g., Def. Memo. (Dkt. No. 20) at 2, and Plaintiffs recognize that the Court may take notice of documents filed with this Court, Pl. Memo. (Dkt. No. 24) at 4.

[6] This standard has been enunciated with respect to retaliation alleged by public employees. The standard is the same in the present case because for purposes of First Amendment retaliation claims, "there is no legally relevant distinction between government employees and independent contractors." Hous. Works v. Turner, 179 F. Supp. 2d 177, 195 (S.D.N.Y. 2001) (citing to Bd. of County Comm'rs v. Umbehr, 518 U.S. 668, 684 (1996)).

Cir. 1994).  Likewise, County Defendants do not contest Plaintiffs' assertion that the transferring of

SEIT session hours is an adverse employment decision.  In their motion to dismiss, County

Defendants contend that Plaintiffs will not be able to present evidence to prove the existence of the

third element, a causal connection between the transfer of SEIT session hours and the exercise of

Dorsett-Felicelli's First Amendment rights, because under New York State Education Law, it is the

board of education that makes those determinations, not the County.  Def. Memo. (Dkt. No. 20) at

10.

The Second Circuit has stated that the "ultimate question of retaliation involves a

defendant's motive and intent, both difficult to plead with specificity in a complaint."  Dougherty,

282 F.3d at 91.  Therefore, "[i]t is sufficient to allege facts from which a retaliatory intent on the

part of the defendants reasonably may be inferred."  Id.

Plaintiffs have alleged that beginning in the Fall 2003, Dorsett-Felicelli began to complain to

County officials regarding the County's use of unlicensed independent contractors.  Complaint (Dkt.

No. 1) at ¶¶ 27-28.  Plaintiffs contend that the County subsequently was involved in encouraging

three Pyramids employees to establish a competing agency, noting that the County Legislature

uncharacteristically voted by telephone rather than in chambers to expedite North Country Kids'

service provider approval in February 2004.  Dorsett-Felicelli Aff. (Dkt. No. 3) at ¶ 14.  Also in

February 2004, County Defendants began to transfer session hours away from Pyramids to North

Country Kids.  Clinton County Health Dep't. Memo. (Dkt. No. 3, Ex. G).  Plaintiffs also claim that

a forensic linguistic analyst stated that O'Connor could have written an anonymous letter sent to the

Department of Education shortly after the transfer of session hours, alleging that Pyramids' services

put children's safety in jeopardy.  Dorsett-Felicelli Aff. (Dkt. No. 3) at ¶ 18.

In June 2004, Pyramids filed the Article 78 proceeding to have those transferred session hours reinstated. Complaint (Dkt. No. 1) at ¶ 51. Also in June 2004, Pyramids only had 100 EIP session referrals, when in August 2003, it had 546, a number consistent with previous months. Dorsett-Felicelli Aff. (Dkt. No. 3) at ¶ 20. In September 2004, County Defendants transferred a total of 30 SEIT sessions per week for 40 weeks away from Pyramids. Id. at ¶ 21. The transfer of these hours included transfers to Teddy Bear, which Plaintiffs claim subcontracted North Country Kids to provide the services. Id. at ¶ 23. Because it is not an authorized provider of SEIT services, the transfer of hours could not have been directly to North Country Kids. Id. at ¶ 22.

The chronology of events as presented by Plaintiff is sufficient to infer that County Defendants had a retaliatory motive. Plaintiffs have alleged that soon after Dorsett-Felicelli voiced her complaints to the County and the courts, session hours were transferred away from Pyramids and Pre-School at an unprecedented rate by the County to a provider that the County scrambled to have authorized. Although County Defendants have asserted alternative reasoning for the transfers, for purposes of a motion to dismiss, all inferences are made in Plaintiffs' favor.

New York State Education Law, however, provides that the final decision regarding the provision of SEIT services is made by the local board of education, not by the county. N.Y. EDUC. LAW § 4410(1)(k).[7] Although a committee is formed to make a determination as to the necessary services for each child, the committee is only empowered to make a written recommendation to the board of education, which ultimately decides whether to adopt, amend, or reject the recommendation. N.Y. EDUC. LAW § 4410(5)(a)-(c). The role of the municipality is limited to appointing one member to the committee. N.Y. EDUC. LAW § 4410(3)(1).

---

[7] For a detailed description of the statutory scheme, see the Nov. 16 Order. (Dkt. No. 16).

11

Plaintiffs assert that regardless of the statutory scheme, O'Connor and LaCombe control the process by which SEIT services are assigned and make the decisions, and, thus, that the board of education members defer to her.  Complaint (Dkt. No. 1) at ¶¶ 60, 63; Dorsett-Felicelli Aff. (Dkt. No. 3) at ¶ 23.  Although, by statute, the board of education is entitled to make the final decision, if O'Connor and/or LaCombe control the process and do so in retaliation for Dorsett-Felicelli's exercise of her First Amendment rights, that would establish a causal connection sufficient to establish First Amendment retaliation claim.  At this juncture, the Court cannot determine that Plaintiffs can present no set of facts to establish the requisite causal connection pursuant to § 1983. Plaintiffs are entitled to present evidence regarding the actual, as opposed to statutory, role of LaCombe and O'Connor regarding the transfer of SEIT session hours.

### 3.    Qualified Immunity

Qualified immunity is available only when a § 1983 suit is brought against a state official in his individual capacity, making him personally liable for any damages awarded to the plaintiff.  This immunity is not a defense where the defendant is a state or municipality or is a public employee in his official capacity, which is in essence a suit against the defendant's governmental employer because the employer must pay any damages awarded.  See Kentucky v. Graham, 473 U.S. 159, 165-67 (1985).

The Second Circuit Court of Appeals has held, "[o]nce qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Williams v. Smith, 781 F.2d 319, 322 (2d Cir. 1986) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity "provides ample protection to all but the plainly

incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1976).

In deciding whether a state official is entitled to qualified immunity, it must first be determined whether a plaintiff successfully alleged facts showing the violation of a constitutional right by state officials. Saucier v. Katz, 533 U.S. 194, 201 (2001). "If there is no constitutional violation, our inquiry ends." Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003).

If the plaintiff's alleged facts make out a constitutional violation, it is then asked whether the right allegedly violated was "clearly established," meaning that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Even if the right was clearly established at the time of the alleged violation, however, a defendant will still be entitled to qualified immunity if the defendant's conduct was objectively reasonable in light of clearly established law at the time of the violation. Siegert v. Gilley, 500 U.S. 226, 231-32 (1991).

Plaintiffs have alleged that Defendants LaCombe and O'Connor retaliated against them for Dorsett-Felicelli's exercise of her First Amendment rights. Complaint (Dkt. No. 1) at ¶ 70. There is no dispute that Dorsett-Felicelli's speech to County officials was protected by the First Amendment. See Dougherty, 282 F.3d at 91; see also Gagliardi, 18 F.3d at 194. Further, the unlawfulness of retaliating against a person for the exercise of First Amendment rights is apparent. See, e.g., Dobosz v. Walsh, 892 F.2d 1135, 1141 (2d Cir. 1989) ("the proscription of retaliation for a plaintiff's exercise of First Amendment rights has long been established . . . ."). Therefore, Plaintiffs have alleged a violation of a constitutional right that was clearly established at the time of the alleged violation. County Defendants contend in their Reply Memorandum that because there was no law specifically prohibiting the transfer of session hours, the individual Defendants have not

violated any law and are entitled to qualified immunity.  Def. Reply Memo. (Dkt. No. 25) at 6.

County Defendants misunderstand the doctrine of qualified immunity.  The "clearly established

law" to which the doctrine of qualified immunity refers is that contained in the federal Constitution,

in this case, the First Amendment.  As noted above, the right to present grievances to a

governmental body without suffering retaliation is a clearly established constitutional right.  While,

in the absence of any retaliatory motive, it may not be unlawful to transfer session hours, when done

in retaliation for the exercise of constitutionally protected rights, it is.

     County Defendants would still be entitled to qualified immunity if their conduct was

objectively reasonable in light of the clearly established law.  Whether County Defendants actions

were objectively reasonable is a fact-intensive inquiry that is ill-suited to determination on a motion

to dismiss.  See, e.g., Sales v. Barizone, No. 03 Civ. 6691RJH, 2004 WL 2781752, at *16 (S.D.N.Y.

Dec. 2, 2004).  Considering all factual allegations and inferences most favorable to the Plaintiffs, it

cannot be said that County Defendants' conduct was objectively reasonable.  Although County

Defendants claim to have transferred the session hours in response to requests from parents and to

establish continuity of care for the children, that is insufficient for purposes of a motion to dismiss

to establish that the transfer from one facility to another was objectively reasonable.  In order to

make a reasoned determination as to the reasonableness of the transfer of hours, evaluation (and

thus, discovery) of several issues, including the history of the care of the children transferred, the

children's needs at the time of transfer, and the circumstances surrounding the requests of the

parents, is necessary.  It would be premature to reach a decision on the reasonableness of County

Defendants' conduct at this time.  See Zieper v. Reno, No. 00 CIV. 5594(RMB), 2002 WL

1380003, at *8 (S.D.N.Y. June 26, 2002) (unpublished).

14

### 4.    Custom or Policy

County Defendants contend that Plaintiffs have not alleged that a policy or custom of the County led to Plaintiffs' injuries, and thus, a § 1983 action against the County cannot be sustained. Def. Memo. (Dkt. No. 20) at 12.  A municipality may not be held liable under § 1983 for actions of its employees based on a theory of respondeat superior.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978).  To establish municipal liability for unconstitutional acts by its employees, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom, policy or practice. See id. at 694.

A plaintiff may satisfy the "policy, custom or practice" requirement in one of four ways.  He may allege the existence of: (1) a formal policy officially endorsed by the municipality, see Monell, 436 U.S. at 690; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question, see Pembauer v. City of Cincinnati, 475 U.S. 469, 483-84 (1986);  (3) a practice so consistent and widespread that it constitutes a "custom or usage" sufficient to impute constructive knowledge of the practice to policymaking officials, see Monell, 436 U.S. at 690-91; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to "deliberate indifference" to the rights of those who come in contact with the municipal employees, see City of Canton v. Harris, 489 U.S. 378, 388 (1989). Additionally, a plaintiff must show a causal link between an official policy or custom and the plaintiff's injury in order for the court to find liability against the city.  See Batista v. Rodriquez, 702 F.2d 393, 397 (2d Cir. 1983).

In this case, Plaintiffs' allegations concerning LaCombe and O'Connor suffice to meet the requirements for a § 1983 claim.  Defendants do not have to be members of a lawmaking body to be

policymakers for purposes of municipal liability.  <u>See</u>, <u>e.g.</u>, <u>Pembrauer</u>, 475 U.S. at 480.  LaCombe

is the Director of the Clinton County Department of Public Health, and O'Connor is the Early

Intervention Official and PreSchool Related Service Coordinator.  Complaint (Dkt. No. 1) at ¶¶ 12,

14.  In the Complaint, Plaintiffs describe LaCombe's position as the "chief executive officer of the

Department responsible for the overall operations of the department that makes the referrals of

children eligible for early intervention services and approving individuals and/or entities as service

providers."  <u>Id.</u> at ¶ 12.  O'Connor is described as being "responsible for making referrals to service

providers and preparation of provider agreements."  <u>Id.</u> at ¶ 16.  From their titles and job

descriptions alone, in the absence of evidence to the contrary, it is easy to infer that each of those

defendants have some decision-making authority for the municipality regarding the transfer of EIP

and SEIT session hours.  The allegations made by Plaintiffs, that LaCombe and O'Connor have in

fact taken action to have session hours transferred from Plaintiffs in retaliation for engaging in

constitutionally protected speech, shows the requisite causal link required for County liability.

Most importantly, however, Plaintiffs make allegations of retaliation directly against the

County Legislature, which is the ultimate policymaker for the County.  Regardless of any actions

taken by LaCombe and O'Connor, this is sufficient to establish County liability.  <u>See</u>, <u>e.g.</u>,

<u>Pembrauer</u>, 475 U.S. at 480 ("No one has ever doubted . . . that a municipality may be liable under §

1983 for a single decision by its properly constituted legislative body–whether or not that body had

taken similar action in the past or intended to do so in the future–because even a single decision by

such a body unquestionably constitutes an act of official government policy.").

**IV.    Conclusion**

Based on the foregoing discussion, it is hereby

16

ORDERED, that the Court will **STAY** federal action on the request for punitive relief for the First Amendment violations relating to the transfer of EIP session hours, until a resolution of the Article 78 proceeding in state court; and it is further

ORDERED, that the Court will abstain from all other claims for declaratory or injunctive relief relating to the transfer of EIP session hours; and it is further

ORDERED, that the motion to dismiss is **DENIED**; and it is further

ORDERED, that the Clerk serve a copy of this order on all parties.

DATED: June 1, 2005
      Albany, New York

Lawrence E. Kahn
U.S. District Judge

17