**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DORSETT-FELICELLI, INC., *doing business as*
*Pyramids* and PYRAMID PRE-SCHOOL, INC.,

                           Plaintiffs

          - v -                                    Civ. No. 1:04-CV-1141
                                                        (LEK/RFT)

COUNTY OF CLINTON, PAULA CALKINS
LACOMBE, *Individually and in her official capacity*
*as Director of the County of Clinton Department of*
*Public Health*, KATHERINE O'CONNOR,
*Individually and in her official capacity as Early*
*Intervention Official and Pre-School Related Service*
*Coordinator*, and NORTH COUNTRY KIDS, INC.,
STEPHANIE GIRARD, KELLY MCCAULEY, and
MELISSA PUCHALSKI,

                           Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

MEREDITH H. SAVITT, P.C.                   MEREDITH H. SAVITT, ESQ.
*Attorney for Plaintiffs*
636 Delaware Avenue
Delmar, New York 12054

RYAN & SMALLACOMBE, PLLC                   CHRISTOPHER R. LYONS, ESQ.
*Attorney for Clinton County Defendants*
100 State Street, Suite 800
Albany, New York 12207

WHITEMAN, OSTERMAN, & HANNA                JOHN J. HENRY, ESQ.
*Attorney for New County Kid Defendants*
One Commerce Plaza, Suite 1900
Albany, New York 12260

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

<u>**MEMORANDUM-DECISION and ORDER**</u>

This case has traveled an unusually circuitous routein addressing the nature of the claims.[1]  Recently, this case has been confounded by yet another obstacle that may derail it further from a punctual resolution of all of the attending issues.  Currently, the Court is confronted by a rather anomalous matter triggered by the Plaintiffs' recent filing of petitions for bankruptcy.  The issue bedeviling the Court is whether 11 U.S.C. § 362, an automatic stay provision, is applicable at this time to all features of this litigation.

The Court remains unaware as to when both Plaintiffs filed petitions for bankruptcy but we can presume that such filings occurred after the filing of the

---

[1]  This civil rights action, pursuant to 42 U.S.C. § 1983, alleging a violation of Plaintiffs' First Amendment rights, was commenced on September 30, 2004.  Dkt. No. 1, Compl.  Concurrently, a Motion for Preliminary Injunction was filed.  Dkt. No. 3.  While the Motion for Preliminary Injunction was pending, on December 23, 2004, the Clinton County Defendants filed a Motion to Dismiss.  Dkt. No. 20.  In part because there was a pending Article 78 proceeding pending in New York State Supreme Court, a Memorandum-Decision and Order, dated June 1, 2005, was issued staying this federal action and, for other reasons, the Complaint was dismissed.  Dkt. No. 27.  Eventually, on September 26, 2006, the stay was lifted, Dkt. No. 38, Mem.-Dec. & Order, dated Sept. 26, 2006, and a Judgment of Dismissal was docketed, Dkt. No. 39.  An appeal was taken from that Judgment.  On January 8, 2009, the Second Circuit issued a Mandate and a Decision and Order vacating, remanding, and reinstating the Complaint.  *See* Dkt. Nos. 45 & 46.  On February 10, 2009, this Court issued a Uniform Pretrial Scheduling Order.  Dkt.  No. 50.  However, shortly thereafter, Plaintiffs filed a Motion to Amend/Correct and to Supplement the Complaint.  Dkt. No. 51.  Because of the current issue, only the North Country Kids Defendants have filed any opposition, Dkt. No. 58, and the Clinton County Defendants are requesting additional time to submit opposition to Plaintiffs' Motion to Amend, Dkt. No. 60.

Complaint.  It was not until April 20, 2009, when the Court was first notified that currently pending in the United States Bankruptcy Court for the Northern District of New York, are Chapter 11 petitions for Pyramids Child Development Center and Dorsett-Felicelli, Inc.  Dkt. No. 54, County Defs.' Lt.-Br., dated Apr. 20, 2009. Apparently Plaintiffs' Counsel made an application before the Bankruptcy Court for permission to act as special counsel in this litigation. *Id*.[2] Realizing that there are now parties to this litigation who have pending bankruptcy matters, the Court pondered whether the automatic stay provision of 11 U.S.C. § 362 was applicable to this civil litigation.  To cut to the quick on this issue, the Court immediately held a telephone conference on May 4, 2009.  The Conference did not resolve the particular issue of whether only Defendants' potential claims are stayed or if the entire litigation, including Plaintiffs' Complaint, should be stayed as well. Because the breadth of the automatic stay remained indeterminate, the Court directed the parties to brief this issue. *See* Dkt. Nos., 61, Pls.' Lt.-Br., dated May 13, 2009, 62, North Country Defs.' Lt.-Br., dated May 19, 2009, & 63, County Defs.' Lt.-Br., dated May 20, 2009.

Apparently, the parties are in agreement that Defendants' prospective

---

[2] During a telephone conference pertaining to the bankruptcy matter, it was represented that the President of Dorsett-Felicelli, Inc., who is attempting to appear in this action, may also declare bankruptcy.

counterclaims[3] are stayed, pursuant to 11 U.S.C. § 362(a). *Acands, Inc. v. Travelers Cas. and Sur. Co.*, 435 F.3d 252, 259 (3d Cir. 2006) (finding that the stay would not preclude nor prevent any defense interposed by defendants to a debtor plaintiff's cause of action).[4] Where the parties continue to differ is whether any stay automatically imposed in this action extends to Plaintiffs' Complaint as well. Plaintiffs posit that it does not, while the Defendants unanimously proffer that it does, or should.

11 U.S.C. § 362(a)(1) states that

> [e]xcept as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of–(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; (3) any act to obtain possession of property of the estate or of property

---

[3] Presently, no Defendant has pleaded a counterclaim against either Plaintiff. However, Clinton County Defendant notes that it is a significant creditor in the bankruptcy proceeding because of monies owed to it for overpayment surrounding the actual referrals in his action. Dkt. No. 63 at p. 1. Therefore, a viable motion to amend the answer to include a counterclaim may eventually ensue.

[4] The Third Circuit instructs us that "[d]efenses, as opposed to counterclaims, do not violate the automatic stay because the stay does not seek to prevent defendants sued by a debtor from defending their legal rights and 'the defendant in the bankrupt's suit is not, by opposing the suit, seeking to take possession of it[.]'" *Acands, Inc. v. Travelers Cas. and Sur. Co.*, 435 F.3d at 259 (quoting, in part, *Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575, 577 (7thCir. 1989)).

from the estate or to exercise control over property of the estate; (4) any act to create, perfect, or enforce any lien against property of the estate; (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and (8) the commencement or continuation of a proceeding before the United States Tax Court concerning a corporate debtor's tax liability for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

11 U.S.C. 362(a) (1)-(8).

Courts have found the operative words within this statutory scheme to be "against the debtor." It is settled law within this Circuit, as well as other circuits, that the stay provision of § 362 is applicable solely to all proceedings against a bankrupt debtor. *Koolik v. Markowitz*, 40 F.3d 567 (2d Cir. 1994) (citing *Teachers Ins. & Annunity Ass'n of Am. v. Butler*, 803 F.2d 61, 62 (2d Cir. 1986); *Acands, Inc. v. Travelers Cas. and Sur. Co.*, 435 F.3d at 259 (quoting *Ass'n of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d. Cir. 1982); *Kilmer v. Flocar, Inc.*, 212 F.R.D. 66, 73 (N.D.N.Y. 2002) (confirming that the operative statute stays only proceedings against a "'debtor' - the term used by the statute itself").[5]   The stay is

---

[5] Regarding debtors, this automatic stay is applicable to all proceedings including appeals. *Koolik v. Markowitz*, 40 F.3d 567, 568-69 (2d Cir. 1994) (ruling that an answer containing a counterclaim against plaintiff is an action against the debtor and thus should be stayed); *Ostano*

(continued...)

automatic and does not require a formal request; "rather, the onus is on the party

seeking to proceed to petition the Bankruptcy Court for relief from the stay."

*Arcands, Inc. v. Travelers Cas. and Sur. Co.*, 435 F.3d at 259.  Whether a stay

becomes operative is determined by the posture of the parties at the commencement

of the action or proceeding.  *Koolik v. Markowitz*, 40 F.3d at 568.  The purpose of the

stay is to serve the interests of both the debtor and creditor and to prevent any

diminution in the bankrupt estate; accordingly, even the debtor cannot waive nor limit

the stay in any manner.  *Ostano Commerzanstalt v. Telewide Sys. Inc.*, 790 F.2d 206,

207 (2d Cir. 1986); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204

(3d Cir. 1992).  Nonetheless, the statute does not specifically address actions brought

by the debtor.  *Ass'n of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682

F.2d at 448.  Actually, based upon the precedents reviewed by this Court, it appears

that a plaintiff's action is not stayed but rather permitted and expected to proceed

since it is an asset of or inures to the benefit of the bankruptcy estate.  *Maritime Elec.*

*Co. Inc. v. United Jersey Bank*, 959 F.2d 1194 (defendant debtor's counterclaims

---

[5](...continued)

*Commerzanstalt v. Telewide Sys., Inc*., 790 F.2d 206, 207 (2d Cir. 1986) (for the proposition that 11 U.S.C. § 362 includes continuation of any proceeding and an appeal is a continuation of an action); *Arcands, Inc. v. Travelers Cas. and Sur. Co.*, 435 F.3d 252 (applicable to arbitrations); *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991) (noting that the scope of the automatic stay is broad and encompasses all proceedings); *In re Capgro Leasing Assn'n*, 169 B.R. 305, 310 (Bankr. E.D.N.Y. 1994) ("Eight of the twelve circuit courts of appeals have held that the automatic stay prevents a debtor from appealing the decision of a non-bankruptcy forum, where that action was originally commenced against the debtor.").

against plaintiff father's corporation were not stayed); *Ruff v. Fiondella*, 2008 WL 5220980 (D. Conn. Super Nov. 21, 2008) (the statute "does not . . . operate as a stay in the plaintiff's case against the defendant."); *Kilmer v. Flocar, Inc*., 212 F.R.D. 66 (plaintiff's tort action was allowed to proceed notwithstanding the plaintiff's Chapter 7 bankruptcy filing). Therefore, in weighing the facts of this Court, it appears that Plaintiffs may proceed with their civil rights action even though Defendants are stayed from prosecuting any counterclaim that they may muster.

Both groups of Defendants argue that *Acands, Inc. v. Travelers Cas. & Sur. Co.*, provides the requisite ammunition to stay Plaintiffs' causes of action as well as their prospective counterclaim(s) during the pendency of this bankruptcy. 435 F.3d at 259- 260. They argue that if Plaintiffs proceed with their claims and then lose, Defendants would be entitled to an affirmative relief of attorney fees and costs, under 42 U.S.C. § 1988. And, in such event, it would be a significant diminution of the bankrupt estate, an consequence Congress sought to avoid by enacting 11 U.S.C. § 362(a). The genesis of their argument is the Third Circuit's dictum that reads:

> [f]or a claim to fall within the scope of § 362(a)(3), it must also be shown that the grant of affirmative relief to Travelers constitutes an act to obtain possession of ACandS's contractual right to a 45% allocation of claims to the operations coverage. Although it cannot accurately be said that Travelers obtained ACandS's rights under the policy, we nevertheless hold that the grant of affirmative relief was an act barred by the automatic stay. The possession or control language of Section 362(a)(3) has consistently been interpreted to prevent acts that diminish

future recoveries from a debtor's insurance policies.
*Id*. at  260 -261 (citations omitted).

Therein, the Third Circuit was rightfully concerned about an arbitration award diminishing an insurance policy which was an important asset of the estate.

Yet this Court is not persuaded it must legally and logically extrapolate from the concerns in *Acands* to prevent acts that may diminish future recoveries, that this principle should be extended to the **possibility** of an award of attorney fees should Plaintiffs' lawsuit fail.  That possibility is too contingent and remote for it to neatly enfold within the concept of affirmative relief as contemplated by the statute and appellate interpretation.  Defendants did not provide, nor was this Court able to find, any precedent that even implies that the imposition of attorney fees and costs should be a factor in calculating whether debtor's suits should be stayed during a bankruptcy. Accordingly, on this basis, the Court does not grant a stay of the entire lawsuit.

Next, Defendants submit that the Court should use the equity authority provided by 11 U.S.C. § 105 to stay the entire litigation.  11 U.S.C. § 105(a) states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The County Defendants submit that 11 U.S.C. § 105(c) in conjunction with 11 U.S.C. § 362(a) give this Court authority to issue a more comprehensive stay in this case.  11 U.S.C. § 105(c) states that "[t]he ability of any district judge . . . to exercise any of the authority or responsibilities conferred

upon the court under this title shall be determined by reference to the provisions relating to such judge . . . set forth in title 28."

The Second Circuit was asked to address the implementation of § 105 in *Teacher Ins. and Annuity Ass'n of Am. v. Butler*, 803 F.2d 61. In that case, the Second Circuit narrowly framed the issue as whether the bankruptcy court's equity power to stay aspects of a case under § 105 was "properly extended . . . to the non-bankrupt general partners." *Id*. at 65. In this respect, the Second Circuit wrote that "while we decline to define under what [specific] circumstances, if any, a bankruptcy court may properly exercise § 105 jurisdiction to issue a stay with respect to non-bankrupt co-defendants, it is clear that any such jurisdiction cannot extend to efforts made in bad faith by non-bankrupt co-defendants[.]" *Id*. at 65-66. Even though the Second Circuit refrained from providing a definition or even examples of what may constitute specific circumstances, if such specific circumstances exist, non-debtors may be protected by the automatic stay "if it contributes to the debtor's effort to achieve rehabilitation." *Thomas Kernaghan & Co. v. Global Intellicom, Inc.*, 2000 WL 640653, at *14 (S.D.N.Y. May 17, 2000) (quoting *Teachers Ins. and Annuity Ass'n*, 803 F.2d at 65). Considering this limited guidance, and the plain language of 11 U.S.C. § 105(c), this Court cannot say that the possible imposition of attorney fees and court costs, which are contingent upon the dismissal of this action, constitutes the type

of specific circumstances contemplated in *Butler*.  Nor can we say that even if such event could be deemed a specific circumstance, we would find that it contributes to debtor's efforts to rehabilitate.  The speculative events in this case constrain us to find otherwise insofar as those eventualities would not contribute to rehabilitating the debtor.  Moreover, based upon the record and the arguments presented, the Court is not swayed to utilize its inherent discretion to control its docket by issuing a stay.

Next, Defendants contend that Plaintiffs lack the capacity to pursue this claim outside the bankruptcy court.  Their underlying premise for this contention is that Plaintiffs have failed to list this claim as an asset in their bankruptcy petitions and therefore cannot prosecute it in this Court.  As an adjunct matter, there is a pending motion to dismiss the bankruptcy cases, an opportunity to negotiate a temporary relief of monies owed for back taxes in order to avoid dismissal of the Chapter 11 petition, or the likely conversion of the Chapter 11 petitions into Chapter 7 proceedings, all of which will be heard on July 15, 2009.  If the bankruptcy matter is converted into a Chapter 7 proceeding, a trustee will be appointed, who will then prosecute this matter.  For these reasons, Defendants ask this Court to stay the entire litigation.  *See* Dkt. Nos. 62 & 63.

It is well settled law that once a trustee is appointed, a debtor loses all authority to litigate any claim for or against the estate.  *In re Flanagan v. Mangan*, 503 F.3d

171, 179 (2d Cir. 2007) (citing 3 COLLIER ON BANKRUPTCY ¶ 323.03, 03.[1], at 323-7

to 9).  Further,

> once [a] plaintiff file[s] for [Chapter 7] bankruptcy, she [loses] the
> capacity to pursue [her] employment discrimination claims in her own
> right. . . .[A]ll of petitioner's assets - whether legal or equitable interest
> in property - [become] the property of her bankruptcy estate upon filing.
> Causes of action are thus assets of the estate. . . . Once appointed, it is the
> trustee who, as the sole representative of the estate, is charged with the
> responsibility for administering estate property and has the capacity to
> sue on its behalf.

*Chapple v. Fahnestock & Co.*, 2006 WL 2546563, at *2 (E.D.N.Y. Sept. 1, 2006)
(citing, *inter alia*, *Seward v. Devine*, 888 F.2d 957, 963 (2d Cir. 1989)).[6]

This established principle of law notwithstanding, what confounds this rather clear

rule and its applicability here is that the Honorable Robert E. Littlefield, Jr., Chief

United States Bankruptcy Judge, issued an Order, dated May 18, 2009, approving the

retention of Meredith H. Savitt, as Special Counsel to Plaintiff Pyramids Child

Development Center, one of the debtors, for its representation in this District Court

civil action against Clinton County.  Dkt. No. 63, Ex A.  Attorney Savitt asserts that

this Order empowers her to proceed on behalf of a Plaintiff.  Defendants characterize

her appointment as conditional, pending the appointment of a trustee.

　　　Upon further reflection, this Court agrees with Ms. Savitt's view of Judge

Littlefield's Order.  Knowing that Pyramid Child Development Center had filed a

---

[6] However, if this case was a Chapter 13 petition, the debtor would have standing to litigate the causes of action "that are not part of a case under title 11."  *Olick v. Parker v. Parsley Petroleum Co.*, 145 F.3d 513. 515-16 (2d Cir. 1998)

Chapter 11 petition that has the potential of being converted into a Chapter 7, weighing, and then granting the debtor's application for Savitt's appointment as Special Counsel in this litigation, Judge Littlefield must have decided that it was appropriate for this litigation to proceed without the benefit of a trustee's role or input. Moreover, Judge Littlefield ordered Ms. Savitt to report to him certain developments as they relate to his litigation.[7]  Speculation as to whether the bankruptcy will be converted to a Chapter 7 with an appointment of a trustee serves no significant consequence at this moment.  Therefore, the litigation will proceed.

There is a Motion to Amend/Correct and to Supplement the Complaint pending before this Court.  Dkt. No. 51; *see supra* note 1.  Only the North Country Kid Defendants have filed an opposition to the Motion.  Dkt. No. 58.  The County Defendants have sought an extension of their time to respond to the Motion and discovery demands pending a resolution of their request for a stay.  Dkt. No. 62. Accordingly, County Defendants' opposition to Motion to Amend shall be served and filed on or before July 7, 2009.

Lastly, Plaintiffs are directed to file a status report with this Court after their July 15, 2009 Conference with the Bankruptcy Court.

---

[7] For Judge Littlefield to issue this Order appointing special counsel, evidently he had to have considered the significance of this lawsuit to the bankruptcy estate, without specifically stating that it was an asset.

*-12-*

**IT IS SO ORDERED**.

June 5, 2009
Albany, New York


RANDOLPH F. TREECE
United States Magistrate Judge