UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

DORSETT-FELICELLI, INC., d/b/a
PYRAMIDS,PYRAMINDS PRE-SCHOOL,
INC., and MELISSA DORSETT-FELICELLI,

                        Plaintiffs,

   -against-                                        1:04-CV-01141 (LEK/RFT)

COUNTY OF CLINTON, PAULA CALKINS
LACOMBE, Individually and in her official
capacity as Director of the County of Clinton
Department ofPublic Health, and KATHERINE
O'CONNOR, individuallyand in her official
capacity as Early Intervention Official and
PreSchool Related Services Coordinator, NORTH
COUNTRY KIDS, INC., STEPHANIE GIRARD,
KELLY MCCAULEY, and MELISSA PUCHALSKI,

                        Defendants.

## **MEMORANDUM-DECISION AND ORDER**

**I.  INTRODUCTION**

      Presently before the Court is the Motion to dismiss filed by North Country Kids, Inc., Stephanie Girard, Kelly McCauley, and Melissa Puchalski ("Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  Memorandum of Law (Dkt. 80-4).  The claim at issue was brought under the New York common law (Amended and Supplemental Complaint, (Dkt. 74) ¶ 1 ("Complaint")) pursuant to the Court's supplemental jurisdiction,  asserting that Defendant tortuously interfered with contractual relations existing between Dorsett-Felicelli, Inc., d/b/a Pyramids Pre-School, Inc. and Dorsett-Felicelli Inc. ("Plaintiffs") and the County of Clinton.  <u>Id.</u> ¶ 90.  Melissa Dorsett-Felicelli was added as a plaintiff in the present action only as

to two claims arising under the First Amendment against the County of Clinton and two of its employees, Paula Calkins Lacombe and Katherine O'Connor.  Memorandum-Decision and Order (Dkt. No. 73) at 48.  She is not a plaintiff, however, for purposes of the tortuous interference with a contract claim and the present Motion to dismiss.  See id.  For the reasons that follow, Defendants' Motion to dismiss is granted.

**II. BACKGROUND**

Plaintiffs are providers of early intervention and preschool services under a written agreement entered into February 5, 2003 between Plaintiffs, the County of Clinton, and the Clinton County Department of Public Health.  Early Intervention Contract, Ex. B (Dkt. No. 80-4) ("Provider Agreement").  Under the Provider Agreement, Plaintiffs agreed to provide early intervention services to infants and toddlers with developmental delays and disabilities.  Provider Agreement at 1.  Plaintiffs would be reimbursed for providing these services by the County of Clinton.  Id. ¶ 10.  The Provider Agreement can be terminated by the County upon thirty days notice or immediately for cause.  Provider Agreement ¶ 21.  The Provider Agreement, while requiring Plaintiffs to be available as a provider on a twelve month basis, does not bind Clinton County for any specific duration.  Provider Agreement at 1.  Plaintiffs affirmatively concede that the Provider Agreement remains effective between the parties.  Complaint ¶ 25.

Plaintiffs state in the Complaint that Defendants Girard, McCauley, and Puchalski were employees of Plaintiffs prior to January 30, 2004.  Complaint ¶ 30.  Plaintiffs alleged that on January 30, 2004 they gave Plaintiffs thirty days notice of their anticipated resignation from their positions and effectively left the employment on February 13, 2004.  Id. ¶ 32–33.  Plaintiffs also allege that Defendants Girard, McCauley, and Puchalski were awaiting final approval of their own business from the Clinton County Legislature at the time of their resignation, to be known as

North Country Kids, Inc., to serve as an early intervention service provider. Id. at 34. Plaintiffs assert that once approval was granted Clinton County began assigning provider sessions previously handled by Plaintiffs to North Country Kids, Inc. Id. ¶ 41, 47.

Plaintiffs allege that Defendants Puchalski, McCauley, and Girard strategically set their termination date so it was possible to have students to whom they provided services transferred to Plaintiff's employees at North Country Kids, Inc. Id. ¶ 32. Plaintiffs also assert that Defendants had knowledge of the existence of the Provider Agreement. Id. ¶ 66.

Plaintiffs further allege North Country Kids, Inc. is not a multi-service provider, as required under applicable New York state regulations, and has thus entered into a subcontracting agreement with Teddy Bear, Inc. (the only other agency providing pre-school services in the Clinton County district) whereby North Country Kids, Inc.'s teachers provide services to students referred by Clinton County to Teddy Bear Inc. Id. ¶ 49–51. Plaintiffs contend that this subcontracting agreement allows Clinton County to refer sessions to North Country Kids, Inc. through Teddy Bear, Inc. Id. ¶ 51.

In addition to the claim at issue in this Motion to dismiss, Plaintiffs also brought a First Amendment claim against Clinton County. Id. ¶ 86. Plaintiffs assert that session hours were transferred away from Plaintiffs to North Country Kids Inc. in retaliation for Plaintiffs' complaints that Clinton County was giving independent contractor status to individual service providers. Id. at 28. Plaintiffs also claim that Clinton County, Defendants Puchalski, McCauley, Girard, and two county employees expedited the vote to approve North Country Kids, Inc. as an early intervention provider so the sessions assigned to Defendants Puchalski, McCauley and Girard while employed by Plaintiffs could be transferred to them at North Country Kids, Inc. Id. ¶ 36.

Plaintiff Pyramids Preschool, Inc. filed a voluntary petition for Chapter 11 bankruptcy during the pendency of this case. Voluntary Petition, Ex. A (Dkt. 80-3) ("Bankruptcy Petition"); Henry Aff. (Dkt. No. 80-2) ¶ 5. Plaintiffs' petition for bankruptcy does not list the present action as an asset of the estate. Henry Aff. (Dkt. 58-2) ¶ 7.

## III. DISCUSSION

### A. Standard of Review

In reviewing a complaint on a motion to dismiss pursuant to Rule 12(b)(6), the facts stated in the complaint must be accepted as true, and all reasonable inferences from those facts are to be drawn in the plaintiff's favor. In re NYSE Specialists Sec. Litig., 503 F.3d 89, 91 (2d Cir. 2007). The court assumes the truth of only the plaintiff's well-pleaded facts—legal conclusions are not afforded the same treatment. Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). For the complaint to survive a motion to dismiss, "the complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility requires more than just a "sheer possibility that a defendant has acted unlawfully." Id.

Thus, in reviewing a complaint on a motion to dismiss pursuant to Rule 12(b)(6), the court's analysis consists of two prongs: First, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Second, as to a plaintiff's well-pleaded factual allegations, the court will "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. This determination is "a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." Id. (citation omitted).

### 1. Tortuous Interference With Contractual Relations Claim

To state a claim for relief for tortuous interference with contractual relations under New York law, a plaintiff must allege: (1) the existence of a valid contract between plaintiff and a third party, (2) defendant's knowledge of that contract, (3) defendant's intentional and improper procuring of a breach of that contract, and (4) damages incurred by the plaintiff. White Plains Coat & Apron Co., Inc. v. Cintas Corp., 8 N.Y.3d 422, 426 (2007); Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 94 (1993). "Deliberate interference with plaintiff's contractual rights that causes damage" is not enough to succeed on a tortuous interference with contractual relations claim—actual breach of contract is required under New York law. NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc., 87 N.Y.2d 614, 620–21 (1996); See also Kronos, Inc., 81 N.Y.2d at 94. Thus, in order to survive a motion to dismiss under Rule 12(b)(6), sufficient facts must be plead in the complaint to support the conclusion that the contract was actually breached, not only that damages have resulted due to a defendant's interference. See NBT Bancorp Inc., 87 N.Y.2d at 620–21.

The element at issue in the present Motion to dismiss is whether the facts alleged in the Complaint are sufficient to support a finding that there was an actual breach of the Provider Agreement. Under New York law, a breach of contract occurs where a party fails "'to perform its obligations under a valid and binding contract.'" Ez-Tixz, Inc. v. Hit-Tix, 969 F. Supp. 220, 225 (S.D.N.Y. 1997) (quoting Custom Imports, Inc. v. Hanmee Trading Co., Inc., 569 F. Supp. 1126, 1130 (S.D.N.Y. 1984); Manufacturers and Traders Trust Co. v. Cottrell, 71 A.D.2d 538, 543 (4th Dep't 1979) (citing Wegman v. Dairylea Co-op., Inc., 50 A.D.2d 108, 113 (4th Dep't

1975).

Plaintiffs have alleged a reduction in the number of sessions being referred by Clinton County and thus a consequent loss in revenue. See Complaint ¶ 41–44, 72, 76, 81–83. Plaintiffs have failed, however, to allege how Defendants have failed to perform under the Provider Agreement. A reduction in the number of sessions being referred by Clinton County is not a failure of performance under the agreement; the Provider Agreement does not impose a duty upon Clinton County to keep the number of referrals constant, nor is there any provision that indicates a minimum number of session hours to be referred to Plaintiffs. Similarly, nothing in the Provider Agreement indicates exclusivity—no facts have been alleged indicating that Clinton County contracted away the right to enter into similar provider agreements with other parties or that Plaintiff relied on such a promise when entering the agreement. Absent any factual allegations of a connection between the reduction in session hours and a failure of Defendants to perform under the Provider Agreement, Plaintiff has failed to allege facts that would allow a finding of actual breach of the Provider Agreement.

Further, a terminable at will contract cannot form the basis of tort liability under New York law. AIM Intern. Trading, L.L.C. v. Valcucine S.P.A., Case No. 02 Civ 1363, 2003 WL 21203503 at *5 (S.D.N.Y. May 22, 2003) (citing Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183 (1980)); See, e.g., Discover Group, Inc. v. Lexmark Intern., Inc., 333 F. Supp. 2d 78, 85–86 (E.D.N.Y. 2004) (stating "[b]ecause contracts terminable-at-will may not form the basis of a tortious interference with contract claim in New York, this claim must be dismissed."). The essential element of breach of contract is absent when a contract is terminable at will. Id. The relationship between the parties of a contract terminable at will can be classified as one of prospective contractual relations; the interest one possesses under a contract terminable

at will is merely an expectancy interest and therefore cannot be enforced.  Guard-Life Corp., 50 N.Y. 2d at 193; Waste Service, Inc. v. Jamaica Ash & Rubbish Removal Co., Inc., 262 A.D.2d 401, 402 (2d Dep't 1999); See also NBT Bancorp, 87 N.Y.2d at 622 (stating that such an expectancy interest is "not entitled to the same protection that would have been accorded a legally enforceable right to performance under the agreement"); Havana Central NY2 LLC v. Lunney's Pub, Inc., 49 A.D.3d 70, 79 (1st Dep't 2007) (explaining that "a valid cause of action for tortious interference with contract [cannot] be stated . . . if the plaintiff has no legally enforceable right to performance under the agreement.").  A contract without fixed duration is terminable at will unless the parties expressly provide that it be perpetual.  Compania Emotelladora Del Pacifico, S.A. v. Pepsi Cola Co., 607 F.Supp.2d 600, 603 (S.D.N.Y. 2009) (citing Warner-Lambert Pharm. Co. v. John J. Reynolds, Inc., 178 F.Supp. 655, 661 (S.D.N.Y. 1959)); See also Ketcham v. Hall Syndicate, Inc., 37 Misc.2d 693, 699 (N.Y. Sup. Ct. 1962) (stating "absent a fixed or determinable duration or an express provision that the duration is perpetual, the contract is one terminable at will.").

The Provider Agreement may be terminated by Clinton County upon thirty days written notice to the provider or may be terminated immediately for cause.  Complaint ¶ 24; Provider Agreement ¶ 21.  The parties have not expressly stated an intention that the agreement be perpetual and Clinton County has not bound itself as a party to the Provider Agreement for any period of time.  Since the Provider Agreement can be classified as a terminable at will contract, the interest that Plaintiffs possess under the Provider Agreement is merely an expectancy.  The Court therefore finds that the Provided Agreement cannot form the basis of a tortuous interference with a contract claim.

### B. Implications of Bankruptcy Proceeding

After filing for bankruptcy, a debtor cannot later pursue a claim unless it was "dealt with" in the bankruptcy action or abandoned by the trustee. Dynamics Corp. of America v. Marine Midland Bank-New York, 69 N.Y.2d 191, 195–96 (1987); 123 Cutting Co. v. Topcove Assocs., Inc., 2 A.D.3d 606 (2d Dep't 2003). Property is "dealt with" when it is listed in the schedule of assets and is abandoned where the trustee knows of it and manifests and intent to abandon. Dynamics Corp. of America, 69 N.Y.2d at 196. In order for the trustee to formally abandon the claims, the bankrupt must schedule the cause of action as an asset when filing the petition for bankruptcy. Bromley v. Fleet Bank, 240 A.D.2d 611, 611 (2d Dep't 1997); See also Robinson v. J.A. Wiertel Const., 185 A.D.2d 664, 665 (4th Dep't 1992) (stating "[i]f a debtor fails to schedule an asset, the asset cannot be 'dealt with' during the bankruptcy and, therefore, title to the asset remains in the bankruptcy estate."). Additionally, "actual knowledge by the trustee of a claim is no substitute for improper scheduling." Burton v. 215 East 77th Associates, 284 A.D.2d 122 (1st Dep't 2001); Donaldson, Lufkin & Jenrette Securities Corp. v. Mathiasen, 207 A.D.2d 280, 282 (1st Dep't 1994); see also Bromley, 240 A.D.2d at 612.

Plaintiffs failed to list the present cause of action as an asset in its schedule of assets when it filed its Bankruptcy Petition. See Bankruptcy Petition at 16–20. Because of this failure to list the claim as an asset, the property was not "dealt with" during the bankruptcy proceeding and Plaintiffs therefore lost the ability to pursue this claim. Although the bankruptcy trustee and Plaintiffs' creditors may have had actual knowledge of the existence of this claim, see Memorandum-Decision and Order (Dkt. No. 73) at 22–26, under the applicable case law, this does not excuse the failure of Plaintiffs to properly schedule it as an asset in the Bankruptcy Petition.

**IV. Conclusion**

For the foregoing reasons, it is:

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. No. 80) is **GRANTED**; and it is further

**ORDERED**, that Plaintiffs' Amended and Supplemental Complaint (Dkt. No. 74) is **DISMISSED, without prejudice**, consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:	March 22, 2011
	Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge